UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL ACTION** |
| **VERSUS** | * | **NO. 25-196** |
| **MARCUS GOOD** | * | **SECTION L (3)** |

\* \* \* \* \* \* \* \* \* \*

## ORDER & REASONS

Before the Court is Defendant Marcus Good's Motion for Reconsideration of this Court's Order revoking the magistrate judge's release order. R. Doc. 39. The Government opposed the motion. R. Doc. 41. Defendant replied. R. Doc. 42. The Court permitted the Government to file a sur-reply. R. Docs. 44, 45. Considering the record, briefing, and applicable law, the Court now rules as follows.

I.  BACKGROUND

Defendant Marcus Good, a citizen and resident of New Zealand, faces a one-count Indictment charging him with assault on a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b). R. Doc. 14. On or around July 19, 2025, Defendant was found seemingly asleep on the concrete landing of an exterior stairwell of the Veteran's Affairs Hospital in New Orleans, Louisiana. R. Doc. 1 at 3; R. Doc. 26 at 13. A Veterans Affairs Police Officer, Maia Prosper, attempted to wake Defendant by rubbing his sternum. R. Doc. 1 at 3; R. Doc. 26 at 24–27. Defendant awoke—apparently intoxicated—and "bear hug[ged]" Officer Prosper around the waist, causing them both to fall onto the concrete landing. R. Doc. 1 at 3; R. Doc. 26 at 11–12 (detention hearing testimony of an officer-witness who described Defendant as being in a "defensive tact mode" between his waking up and bear-hugging of Officer Prosper and that it "looked like he was about to either throw her over [the metal railing] or try to body-slam her").

1

Officer Prosper is believed to have spent 3-4 days in the hospital after the incident and to have experienced a speech stutter that was not present before this incident. R. Doc. 26 at 17–18. She is also preliminarily thought to have suffered a traumatic brain injury with a concussion. *Id.*

The magistrate judge signed a criminal complaint on July 19, 2025. R. Doc. 1. Pursuant to an arrest warrant, Defendant came before the magistrate judge for an initial appearance on July 21, 2025, and was remanded into custody until his July 25, 2025, detention hearing. R. Doc. 6. At the detention hearing, the Government explained, among other things, that Mr. Good was lawfully present in the United States on a 90-day travel visa. R. Doc. 26 at 58. The magistrate judge ordered Defendant be released until trial and contemplated reopening the detention hearing if his visa were to run. *Id.* at 64. His conditions of release included, but were not limited to, submitting to supervision by U.S. Probation, surrendering his passport to U.S. Probation, having his New Zealand-resident travel companion serve as his third-party custodian and surrender her passport as well, submitting to location monitoring technology, restricting his travel to this judicial district, and providing U.S. Probation with the address of, and proof of payment for, his in-district short term rental abode. R. Doc. 20.

At the end of the Friday, July 25, 2025, detention hearing, the Government moved to stay Defendant's release until it could file a brief the following Monday. R. Doc. 26 at 65. The magistrate judge denied the stay, and Defendant was released on bond that Friday. *Id.*; R. Doc. 21. On Tuesday, July 29, 2025, the Government moved to revoke the magistrate judge's release order. R. Doc. 23. By this time, Defendant's visa was presumably revoked because he was in ICE custody due to "his dangerousness to the community." R. Doc. 23-1 at 7; R. Doc. 42-1 at 6. After receiving detailed briefing and hearing oral argument on August 6, 2025, the Court granted the Government's motion to revoke the release order pursuant to its power under the Bail Reform Act,

18 U.S.C. § 3142(e)(1), and by utilizing the factors specified in it at 18 U.S.C. § 3142(g). R. Docs. 32, 36; *see also* R. Doc. 42-1 at 16–17 (motion to revoke hearing transcript). Defendant has now been transported from the ICE detention center in Jena, Louisiana and is presently in the custody of the U.S. Marshals. *See* R. Doc. 41 at 2.

## II.    PRESENT MOTION

Defendant now moves for this Court to reconsider its revocation of his pre-trial release. R. Doc. 39. His arguments center around an inquiry discussed at length during the August 6, 2025, oral argument—Good's ICE detention. *See generally id.* Defendant contends that Mr. Good's ICE detainer or removal order should not influence the Government's request to detain Defendant, nor this Court's pretrial release analysis under the Bail Reform Act. *Id.* at 1–6. He contends that the Government requested a detention hearing because Defendant presents a "serious risk that [he] will flee" pursuant to 18 U.S.C. § 3142(f)(2)(A), and that it did not prove that he poses a serious risk of flight by clear and convincing evidence.[1] *Id.* at 7–9. He proffers an interpretation of the Bail Reform Act's phrase "a serious risk that [defendant] will flee" to mean that *volitional* conduct must be shown to demonstrate that a defendant presents a serious risk of flight. *Id.* at 7–9. Defendant further asserts that the Government "effectively leveraged the actions of another executive agency to obtain the pretrial detention they could not otherwise justify under the [Bail Reform Act]: by characterizing the unilateral actions of immigration authorities as evidence of [Defendant's] 'risk of nonappearance.'" *Id.* at 11.

The Government opposed the motion, arguing that Defendant did not demonstrate his entitlement to the "extraordinary remedy of reconsideration." R. Doc. 41. It moreover avers that

---

[1] As will be discussed later, upon review of the initial detention hearing transcript, this Court finds that the Government moved to detain Mr. Good pursuant to 18 U.S.C. § 3142(f)(1)(A), which permits the Government to move for a detention hearing when the Defendant is charged with a crime of violence. R. Doc. 26 at 6 ("Your Honor, our basis for detention is that, first of all, this is a crime of violence, which got us to this detention hearing . . . .").

3

this Court properly analyzed the relevant § 3142(g) factors provided by the Bail Reform Act when it concluded that there is no combination of release conditions that can reasonably assure Defendant's appearance and/or the safety of others. *Id.* The Government also addressed the ICE detainer issue, citing cases in which other district courts have contemplated ICE detainers and removals in conducting their § 3142(g) analyses. *Id.* at 5–6. Overall, the Government contends that the Court appropriately weighed Defendant's ICE detainer and potential deportation as just one of many factors it considered when ordering Defendant's bond revoked. *Id.*

Defendant replied to address the reconsideration elements and argued that this Court should revoke its prior order to correct a clear error and/or prevent manifest injustice. R. Doc. 42. The brief explains that Mr. Good was not detained by ICE until July 28, 2025, just days after his detention hearing and subsequent release. *Id.* at 4. The parties and the Court were aware of this at oral argument and contemplated whether the Government's request to detain Defendant was moot due to being in ICE custody because his ICE detention makes him unable to flee of his own volition or pose a danger to the community. *Id.* at 4–5. Therefore, he argues, the "risk" of nonappearance/flight here, manifesting in the form of deportation, was created by the Government itself. *Id.* at 5–6.

The Court permitted the Government to file a sur-reply. R. Docs. 44, 45. There, the Government argued that it did not alert ICE of Defendant's conduct to "manufacture a risk of nonappearance through potential removal," but instead felt it "necessary and appropriate [] to alert federal authorities to the circumstances surrounding the crime and the defendant's release back into the public." *Id.* at 2. Indeed, the Government stated that it "felt compelled to alert ICE of the defendant's release . . . out of an abundance of caution because of the defendant's violent actions and his status as a foreign national." *Id.* The Government thus takes the position that the Defendant

4

mischaracterized its actions—and the Court's contemplation of the Bail Reform Act elements—by overstating the influence of Defendant's ICE detainer on the evolving conversation of Defendant's pretrial release or detention. *Id.* at 2–3.

### III.  LEGAL STANDARD

While motions for reconsideration in criminal actions are not explicitly authorized in the Federal Rules of Criminal Procedure, the Fifth Circuit recognizes them as a legitimate procedural device. *United States v. Thompson*, 79 F. App'x 22, 23 (5th Cir. 2003); *see also United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991) (citing *United States v. Cook*, 670 F.2d 46, 48 (5th Cir. 1982), *cert. denied*, 456 U.S. 982 (1982)).  Courts generally apply the same legal standards to motions for reconsideration in criminal proceedings as they do in civil cases. *United States v. Evans*, No. 15-61, 2018 WL 6427854, at *2, *2 n.6 (E.D. La. Dec. 7, 2018).

Depending on whether the motion for reconsideration challenges a final judgment or an interlocutory order, courts may apply different standards borrowed from the Federal Rules of Civil Procedure. *United States v. Williams*, No. 19-159, 2019 WL 2161648, at *2 (N.D. Tex. May 16, 2019). "Where a motion for reconsideration challenges a final civil judgment, it is treated either as a motion to alter or amend the judgment under Rule 59(e) . . . or as a motion seeking relief from judgment under Rule 60(b)." *Id.* (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n. 14 (5th Cir. 1994)). And "[w]here the motion challenges an interlocutory order, it is considered under Rule 54(b)." *Id.* (citing *Contango Operators, Inc. v. U.S.*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013)).

Rule 54(b) of the Federal Rules of Civil Procedure provides that "at any time before the entry of a judgment adjudicating all the claims" a court may reconsider and revise an "order or

5

other decision . . . that adjudicates fewer than all the claims." Fed. R. Civ. P. 54(b); *see also United States v. Bruhl-Daniels*, No. 18-199, 2020 WL 7632258, at *2 (S.D. Tex. Dec. 21, 2020) (explaining that the Rule 54(b) standard has been interpreted to mean that courts can amend their interlocutory orders "as justice requires"). Whereas Rule 59(e)'s standards are considered an extraordinary remedy because a court would be altering a final judgment, Rule 54(b)'s reconsideration standards are more flexible and provide for amendments to interlocutory orders "for any reason it deems sufficient." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *McClung v. Gautreaux*, No. 11-263, 2011 WL 4062387, at *1 (M.D. La. Sept. 13, 2011)). However, some courts in the past have looked to the more stringent Rule 59(e) standards when assessing whether to amend an interlocutory order under Rule 54(b). *E.g.*, *United States v. CITGO Petroleum Corp.*, 908 F. Supp. 2d 812, 820 (S.D. Tex. 2012) (applying Rule 59(e) standards when assessing the reconsideration of an interlocutory order in a criminal case).

The Fifth Circuit more recently assessed the more flexible nature of Rule 54(b) and found that a district court abused its discretion when it applied Rule 59(e)'s more taxing demands when it denied a motion for reconsideration of an interlocutory order, finding that a district court has wide discretion under Rule 54(b) and could reconsider its interlocutory order "as justice requires." *Austin*, 864 F.3d at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)). Therefore, trial courts are free to reconsider, alter, amend, and reverse interlocutory decisions "even in the absence of new evidence or an intervening change in or clarification of the substantive law." *United States v. Preston*, No. 19-651, 2020 WL 1819889, at *3 (N.D. Tex. April 11, 2020) (quoting *Austin*, 864 F.3d at 336).

Rule 54(b)'s more forgiving standard has been applied by courts in this circuit to motions for reconsideration of detention orders. *E.g.*, *Preston*, 2020 WL 1819889, at *3. Courts have

6

reasoned that "[g]iven the Fifth Circuit's finding of district courts' continuing jurisdiction over criminal cases and freedom to reconsider earlier decisions, this more flexible standard likewise appears applicable in the context of a motion to reconsider a detention order, and it will be applied in this case." *Id.* (citing *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975)) (internal citation omitted).

## IV. DISCUSSION

Defendant wishes for this Court to modify its detention order because, *inter alia*, he believes it improperly considered his ICE detainer when conducting its *de novo* review of the Bail Reform Act elements. *See* R. Docs. 39, 42. Within that framework, he posits that the Government conducted an end-run of the magistrate judge's release order when it discussed Mr. Good's release with ICE officials, ultimately leading to his civil detention. R. Doc. 42. Moreover, Defendant avers that this ICE detention was then argued by the Government, and weighed in on by the Court, as a relevant analytical component of whether Mr. Good presents a serious risk of flight. *Id.* The Court will first explain more fully its reasoning behind its oral explanation of the § 3142(g) factors weighing in favor of Defendant's detention, and then will assess whether it will reconsider the order of detention.

### a. The Bail Reform Act Elements Weigh in Favor of Detention.

As a threshold matter, the Court will address the grounds upon which the entitlement to the detention hearing rests. The Bail Reform Act provides that a "judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community" when certain conditions are present. 18 U.S.C. § 3142(f). Subsection one of § 3142(f) provides that a detention hearing shall be set "upon motion of the attorney for the Government, in a case

7

that involves" one or more of five options, one of them being "a crime of violence." *Id.* at § 3142(f)(1)(A). Defendant here is charged with assault on a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b), and a "conviction under § 111(b) necessarily require[s] a finding that [defendant] intentionally used, attempted to use, or threatened to use physical force against the person of another." *United States v. Hernandez-Hernandez*, 817 F.3d 207, 216–17 (5th Cir. 2016) (citing U.S.S.G. § 2L1.2(b)(1)(A)(ii)). The Fifth Circuit therefore held "that § 111(b) is categorically a crime of violence." *Id.*; *see also* Fifth Circuit Pattern Jury Instructions (Criminal) § 2.07 (2019).

Separately, subsection two of § 3142(f) provides that a detention hearing shall be set upon the Government's motion or the judicial officer's own motion in a case that involves either "a serious risk that [defendant] will flee" or "a serious risk that [defendant] will obstruct or attempt to obstruct justice." 18 U.S.C. § 3142(f)(2). Much of Defendant's briefing is dedicated to an analysis of whether he presents a serious risk of flight as contemplated under subsection two of § 3142(f)—which is a separate basis from "a crime of violence" that the Government or the court may use as grounds to set a detention hearing. Upon review of the initial detention hearing transcript, the Court determined that the Government requested a detention hearing because Defendant is charged with a crime of violence, not because he presents a serious risk of flight. *See, e.g.*, R. Doc. 26 at 6 ("our basis for detention is that, first of all, this is a crime of violence, which got us to this detention hearing"). As a result, this Court will not assess here whether Defendant presents a serious risk of flight as provided for in § 3142(f)(2), and, moreover, did not assess whether Defendant presented a serious risk of flight when it ordered him to be detained.

The Government, therefore, established its entitlement to the detention hearing because Defendant is charged with a crime of violence. Once the entitlement to the hearing is established,

8

for pretrial detention to be imposed on a defendant after a hearing, the Bail Reform Act commands that the Government demonstrate that there is no "condition or combination of conditions [that] will reasonably assure [either the defendant's] appearance [or] the safety of the [] community." 18 U.S.C. § 3142(f); *see also United States v. Reuben*, 974 F.2d 580, 585–86 (5th Cir. 1992). Either the lack of reasonable assurance of the defendant's appearance or the safety of others or the community is sufficient; both are not required. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) (citing cases). However, there are two distinct burdens of proof for the two justifications for detention.

    First, with respect to the "safety of any other person and the community," 18 U.S.C. § 3142(e)(1), the Bail Reform Act specifically requires that the "facts the judicial officer uses to support" this finding "shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f). The Act is silent, however, on the burden of proof required to demonstrate the lack of reasonable assurance for a defendant's appearance. Courts in the Fifth Circuit have been directed to "apply the simple preponderance standard." *Fortna*, 769 F.2d at 250 ("That is to say, to order detention on this ground the judicial officer should determine, from the information before him, that it is more likely than not that no condition or combination of conditions will reasonably assure the accused's appearance."). As the Government stated at oral argument, it moved for detention on both grounds and asserted that it made both required showings—that a preponderance of the evidence shows that Defendant presents a risk of flight, and that clear and convincing evidence exists to show that Defendant poses a danger to the community. *E.g.*, R. Doc. 42-1 at 13.

    The Bail Reform Act further specifies what factors this Court must consider when determining whether there are "conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g).

The four subparts require the Court consider (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person, including" their character, mental condition, family ties, employment, finances, ties to the community, past conduct including criminal history and drug or alcohol abuse[2]; and (4) "the nature and seriousness of the danger to any person or community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4).

The Court explained at the end of oral argument which of the Bail Reform Act's four subparts supported its reasons for granting the Government's motion to revoke. In so granting, it stated:

> [R]ecognizing that the defendant has no ties to the United States, has no financial or personal ties to the United States, that the third-party custodian also has no ties to the United States, the fact that it's a serious injury sustained by a federal officer, the fact that he does have a prior history of having violated the law in his homeland, and in view of the fact that he's now in custody of ICE for the purpose of being transported back to New Zealand . . . I will overrule the magistrate.

R. Doc. 42-1 at 17, ln. 13–21. The above demonstrates that the Court, in conducting its own *de novo* review of the record, determined that many of the factors enumerated in § 3142(g) contributed to its decision to order Defendant be detained pre-trial. The Court came to this determination based both off a finding that no conditions will reasonably assure Defendant's appearance and that no conditions will reasonably assure the safety of other persons and the community. *See* 18 U.S.C. § 3142(f). The Court will take each of the § 3142(g) factors in turn and more further explain its reasons for ordering Defendant detained.

---

[2]   18 U.S.C. § 3142(g)(3)(B) also provides that courts may look at "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on another release pending trial, sentencing, appeal, or completion of sentence" pursuant to Federal, State, or local law. This subpart is not applicable here.

### i. Nature and Circumstances of the Offense Charged

The Court found at the August 6, 2025, oral argument that the four § 3142(g) factors weigh in favor of detention when viewed holistically. In this subpart, the Court will assess its overall thoughts with respect to each of the four factors.

Turning to the first factor, the nature and circumstances of the offense charged—this weighs in favor of detention. *See* 18 U.S.C. § 3142(g)(1). Defendant was charged with a crime of violence for assault on a federal officer, and he faces subpart (b)'s enhanced penalty because he allegedly "inflict[ed] bodily injury" on the officer while she carried out her official duties. 18 U.S.C. § 111(b). Moreover, Mr. Good faces up to twenty years of incarceration if found guilty. *See* 18 U.S.C. § 111(a)(1); *id.* at (b). To be clear, this Court would not find the nature of the crime and lengthy prison sentence *alone* to be enough to justify pre-trial detention. *See United States v. Pedraza*, No. 24-142, 2024 WL 1580192, at *3 (S.D. Tex. April 11, 2024) (discussing that courts should use caution when considering this factor to ensure the pre-trial detention does not amount to punitive incarceration for the charged, but not convicted, offense). But, coupled with the other factors, the first factor weighs in favor of detention.

### ii. Weight of Evidence

The second factor—the weight of the evidence against Defendant—works together with factor one to support detention, though the Court notes that this factor is of the least importance in the detention determination. *United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009), *aff'd*, 341 F. App'x 979 (5th Cir. 2009). The Court has viewed the body camera footage that depicts the underlying incident and finds that the video supports the charges against Defendant set forth

11

in the Indictment.[3] In so viewing, the Court observed Officer Prosper rubbing Defendant's sternum, Defendant rising and coming into contact with Officer Prosper, the presumable fall that resulted, and the Defendant's apprehension by another officer who responded to the scene. The Court observed that Office Prosper's speech devolves over the course of the twelve-minute video, transitioning from clear, unobstructed speech before coming into contact with Defendant to consistent stuttering and apparent trouble forming sentences after coming into contact with Defendant. The Court also reviewed initial detention hearing testimony provided by an officer-witness who was present during a great portion of Officer Prosper's encounter with Defendant. R. Doc. 26 at 9–36.

Overall, considering the body camera footage and testimony of the officer-witness, the Court finds this factor weigh in favor of detention because the foregoing demonstrates the potential dangerousness of this Defendant when placed in certain circumstances. To be clear, the Court only conducts this analysis to evaluate whether the Government carried its burden to show that Defendant presents a risk of flight and/or a danger to the community that cannot be remedied by any condition or set of conditions—not to impose preverdict incarceration. Factors one and two, therefore, contribute heavily to this Court's determination that no condition or set of conditions can reasonably assure Defendant will not pose a safety risk to the community.

### iii. History and Characteristics

The third factor, the history and characteristics of the person—including Defendant's character, mental condition, family ties, employment, finances, ties to the community, past conduct including criminal history and drug or alcohol abuse—is the factor that weighs most heavily in

---

[3] The Bail Reform Act expressly provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information" at a detention hearing. 18 U.S.C. § 3142(f). A judicial officer may, therefore, "rely on matters brought out at the hearing which would not be considered as 'evidence' under traditional trial standards." *Fortna*, 769 F.2d at 250.

this Court's detention determination. *See* 18 U.S.C. § 3142(g)(3). First, as extensively explained and briefed, the Government demonstrated that Defendant has absolutely no ties to this judicial district, and the Defendant presented no evidence to mitigate this showing. First, Mr. Good was present in the United States on a temporary travel visa at the time of this incident; before this visa was presumably revoked, Defendant was not entitled to remain in the United States beyond the visa's allowance period. Second, Defendant's travel companion—who is also a New Zealand national and is present in the United States on her own temporary travel visa—cannot serve as the kind of in-district "family ties from which we can infer that defendant is so deeply committed and personally attached that he cannot be driven from [the community] by the threat of a long prison sentence." *Reuben*, 974 F.2d at 586 (discussing family ties in the context of the rebuttable presumption in 18 U.S.C. § 3142(e)).

Moreover, it is clear to the Court that no condition or combination of conditions can reasonably assure that Mr. Good nor his third-party custodian will remain in this judicial district during the pre-trial period. To this Court's knowledge, Defendant's travel companion herself has no ties to this district and no intention of remaining in the United States beyond the expiration of her travel visa. *E.g.*, *id.* at 41 (discussing renting a short term rental abode). Though this Court appreciates the third-party custodian's apparent willingness to cooperate with the Court and with U.S. Probation, the Court remains concerned whether she could "assert any appreciable control, either physical or emotional," over Mr. Good and his actions. *See United States v. Howard*, No. 06-88, 2006 WL 3300462, at *4 (N.D. Tex. Oct. 19, 2006).

Defendant argued before and at the August 6, 2025, hearing that his ICE detention completely mitigated any risk of flight. R. Doc. 27 at 14–16. Moreover, he argues that, after being detained, Defendant could no longer pose a danger to the community because he was no longer *in*

13

the community. *Id.* at 17. The Fifth Circuit has not yet weighed in on whether an ICE detainer may factor into this Court's detention analysis, though it has clarified that the Bail Reform Act and the Immigration and Nationality Act do not conflict when criminal defendants that are released on bond are subsequently apprehended by ICE. *United States v. Baltazar-Sebastian*, 990 F.3d 939 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 352 (2021). This Court is inclined to agree with the sentiment of a district court in another circuit that surveyed how other courts discuss factoring the ICE detainer into the Bail Reform Act analysis. From that court's perspective, the other district courts which did not factor an ICE detainer into their Bail Reform Act discussions were not "along the southern border and have apparently not had the very real experience of seeing a defendant released, ICE immediately deporting the defendant, the defendant trying to come to the United States so he can appear in court, and the United States Attorney's Office not being able to do anything about the situation." *United States v. Vencomo-Reyes*, No. 11-2563, 2011 WL 6013546, at *11 (D.N.M. Nov. 28, 2011). However, the Court is mindful of the Catch-22 created when one Executive Branch's decision, *i.e.* the Department of Homeland Security's decision to issue an ICE detainer, factors into a favorable decision for another arm of the Executive Branch, *i.e.* Department of Justice's ability to secure its requested pretrial detention. *See id.* (collecting cases discussing this). But, when viewed overall, this Court finds that it would have come to the same determination and order Mr. Good to be detained pretrial even without the ICE detainer and threat of removal.

Separately, the Court notes that Defendant represents that he is a correctional officer back home, has no criminal history,[4] and should not be considered to be a danger to the community because of a single night's mistake made by an otherwise law-abiding foreign national who was severely intoxicated and confused about his location. R. Doc. 27 at 16. The Court is sympathetic

---

4   The Government later submitted evidence of Defendant's criminal history with alcohol.

14

to this argument and finds that overall, this factor weighs in favor of pre-trial detention moreso due to a risk of nonappearance than it does for Defendant being a danger to the community.

In sum, it is this Court's finding that Defendant should be detained pre-trial because no condition or set of conditions mitigate his lack of ties to this judicial district and the consequences that flow from this lack of ties, like the illusory nature of an unsecured appearance bond set as a condition of release. This factor weighs heavily in determining that Defendant poses a risk of nonappearance, particularly when one considers that the Defendant faces a potential sentence of twenty years incarceration.

### iv. Nature and Seriousness of Danger to the Community

The fourth factor commands this Court to consider the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Under this section, Courts may contemplate the effectiveness of any bonds set, including considering the adequacy of any collateral used to secure a bond and whether the bond will reasonably assure the defendant's appearance. *Id.* The Government submitted that ICE detained this Defendant *because* he was a danger to the community. R. Doc. 23-1 at 7. It avers that Defendant "violently assaulted a female federal officer without provocation, causing her to sustain a traumatic brain injury." *Id.* at 7–8. Though this Court is mindful that Officer Prosper administered a sternum rub, potentially disputing the Government's representation that the incident occurred without provocation, it is still the opinion of this Court that this factor weighs in favor of detention because Defendant has motive and incentive to flee and/or to be deported by ICE before trial, and the present unsecured bond of $50,000 appears to this Court to be illusory. *See* R. Doc. 19.

Though this Court appreciates that Defendant's travel companion agreed to, *inter alia*, surrender her passport and remain in the judicial district until trial is over and/or her visa expires,

according to the Court's present knowledge, neither she nor Defendant have any meaningful interest in money or property within this Court's reachable powers—and she, within her rights to do so, declined to put up cash or property to assure his appearance. R. Doc. 41 at 6; *see also* R. Doc. 23-1 ("Because the Defendant is a foreign national with no ties to the United States, it is unclear how the [$50,000 unsecured appearance bond] could ever be collected."). This Court generally believes that the present bond provides an illusory sense of security in this case and thus cannot be the kind of condition that could reasonably assure Defendant's future court appearances.

Moreover, this Court notes that Defendant may pose a danger to the community because the Government has submitted adequate evidence that Defendant endangered the community on what appears to be his first night in New Orleans after over-imbibing and allegedly injuring a federal officer, and that he has an arrest history that involved the temporary revocation of his driver's license for driving while intoxicated. R. Doc. 41 at 7, 7 n.4. This purported history of alcohol abuse, and this Court's awareness of Defendant's alcohol consumption on his first night in New Orleans, weighs in favor of detention because this Court is not reasonably assured that the condition of release restricting Defendant's alcohol consumption is enough to counteract these observations and mitigate against Defendant's potential to be a danger to the community when intoxicated.

### v. Conclusion

The Court ordered Defendant be detained, in part, because it found by a preponderance of the evidence that the information before the Court demonstrated that it is more likely than not that no condition or combination of conditions could reasonably assure Mr. Good's appearance at future court proceedings. This conclusion was based on an evaluation of the § 3142(g) factors overall and was not based solely on Defendant's ICE detainer. Moreover, weighing the same

16

§ 3142(g) factors together, the Court finds that the Government has shown by clear and convincing the evidence that no conditions will reasonably assure the safety of others because of the nature of this alleged crime and, in part, Defendant's alcohol use. While this Court is sympathetic to Defendant's arguments that the subject incident is a one-time, alcohol-ridden mistake, too many other aspects of the Defendant—primarily, his lack of ties to the community and lack of money or property within the Court's reach—caution against a finding for Defendant's pretrial release. With all of this in mind, the Court finds that no condition or set of conditions could be imposed on Mr. Good to reasonably assure he will appear at future hearings, nor reasonably assure the community's safety.

> b. **The Court Will Not Order Defendant's Pretrial Release on Reconsideration Because It Would Have Come to the Same Detention Determination Even If It Had Not Considered the ICE Detainer.**

Defendant's motion for reconsideration argues that he cannot be detained pending trial just because he is a noncitizen. R. Doc. 39 at 4–6. It is true that § 3142(g) does not explicitly reference alienage—or, for that matter, an ICE detainer—as a factor that can be considered by courts when evaluating whether pretrial detention is warranted. However, many of the concepts contemplated by the Bail Reform Act could be heavily influenced by a defendant's status as a nonresident. For example, this Court's determination that detention would be appropriate rested heavily on Defendant's lack of family and money tying him to this judicial district, which is explicitly contemplated by the Bail Reform Act. § 3142(g)(3). Defendant allegedly committed the charged act when in the United States on a temporary visa—with no intention to remain in this judicial district after the expiration of the visa—so his status as a foreign national inherently contributes to the Bail Reform Act factors related to family and personal ties working against him. Moreover, Defendant had the opportunity to present evidence that could tie him to the judicial district with

17

family, friends, or property, but failed to do so; this Court can only conclude, then, that he has no ties to this district and came here only to enjoy some time away from home. The same could be said for a United States citizen traveling to this district from Oregon or Iowa. Therefore, his status as an alien was not determinative in this Court's decision, but was instrumental in creating some of the conditions present for Mr. Good that influenced this Court's analysis under the Bail Reform Act.

To be clear, the foregoing shows that this Court did not rely solely on Mr. Good's ICE detainer when ordering him to be held in custody pending trial. Therefore, this Court finds that Defendant has not demonstrated that this Court erred in finding that the § 3142(g) factors overall weigh in favor of pretrial detention. Even under Rule 54(b)'s relaxed standards, which afford courts the ability to amend their interlocutory judgments "as justice requires," this Court reavers that it properly ordered Defendant be detained pretrial because the Government proved by a preponderance of the evidence that no condition or set of conditions will reasonably assure that Defendant will appear at future hearings, and by clear and convincing evidence that no condition or set of conditions will reasonably assure community safety if Defendant were to be released.

Finally, while not the only factor, the Court is aware of the fact that if Defendant were released, he would be immediately detained by ICE and incarcerated in an ICE facility—most likely outside of the Eastern District. In practice, Defendant's civil ICE detention would make it hard for his counsel to consult with him and could interfere with the upcoming trial in this matter, presently set for September 29, 2025. This is an observation of a practical consequence of the Bail Reform Act and the Immigration and Nationality Act's separate and equal grants of Executive authority, which this Court honors. *See Baltazar-Sebastian*, 990 F.3d at 945–46 (holding that "pretrial release under the [Bail Reform Act] does not preclude pre-removal detention under the

[Immigration and Nationality Act]" and further discussing that the statutes work in concert, not in conflict).

V. **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the Defendant's Motion for Reconsideration, R. Doc. 39, is **DENIED**.

New Orleans, Louisiana, this 9th day of September, 2025.

THE HONORABLE ELDON E. FALLON